STATE OF IOWA ex rel. MATT LAPPE et al., Appellant, v. J. F. SNYDER et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Women as Voters. A wo-
1 man has no right to vote on the question whether a consolidated independent school district shall be established under Section 2794-a, Code Supp., 1913. (See Secs. 1131, 2747, Code, 1897.)

**ELECTIONS:** Women Voters—Increase in Taxation. Whether a
2 proposition, if adopted by a due election, will result in an increase in taxation, must appear to a *certainty* before a woman may legally claim her right to vote on such proposition.

*Appeal from Carroll District Court.*—E. G. ALBERT, Judge.

JUNE 27, 1918.

ACTION in equity to enjoin the officers of a consolidated independent school district from exercising the func-

tions of officers of such corporation, and to enjoin the corporation from assuming any rights as such. Judgment dismissing plaintiffs' petition. Plaintiffs appeal.—*Affirmed.*

*L. H. Salinger* and *F. H. Cooney,* for appellant.

*Lee & Robb* and *F. F. Faville,* for appellees.

GAYNOR, J.—This case presents but one question: Have women a right to vote on the question of organizing a consolidated independent school district, proposed to be made under the provisions of Section 2794-a of the Supplement to the Code, 1913, which reads as follows:

1. SCHOOLS AND SCHOOL DISTRICTS: women as voters.

"When a petition describing the boundaries of contiguous territory containing not less than sixteen sections within one or more counties is signed by one third of the electors residing on such territory, and approved by the county superintendent * * * and filed with the board of the school corporation in which the portion of the proposed district having the largest number of voters is situated, requesting the establishment of a consolidated independent district, it shall be the duty of said board, within ten days, to call an election in the proposed consolidated district, for which they shall give the same notices as are required in Section twenty-seven hundred and forty-six of the Code and twenty-seven hundred and fifty of the Supplement to the Code, 1907, at which election all voters residing in the proposed consolidated district shall be entitled to vote by ballot for or against such separate organization. When it is proposed to include in such district a city, or town or village, the voters residing upon the territory outside the incorporated limits of such city, town or village shall vote separately upon the proposition for the creating of such new district. The judges of said election shall provide separate ballot boxes in which shall be deposited the votes cast by the voters from their respective

territory, and if a majority of the votes cast by the electors residing either within or without the limits of such city, town or village, is against the proposition to form a consolidated independent corporation, then the proposed corporation shall not be formed. If a majority of the votes so cast in each territory shall be in favor of such independent organization, the organization of the proposed consolidated independent school corporation shall be completed by the election of a board of directors for said school corporation, as provided in Section twenty-seven hundred ninety-five of the Code, and when so organized shall not be reduced to less than sixteen sections unless dissolved as provided by this act. No school corporation from which territory is taken to form such a consolidated independent corporation shall, after the change, contain less than four government sections, which territory shall be contiguous and so situated as to form a suitable corporation."

Under the provisions of this section, a petition, approved by the county superintendent, was duly filed, as required by the statute. An election was called, proper notices given, and an election held. To test the validity of the corporation so organized, to enjoin it from exercising any corporate powers, to have it judicially declared to have no legal existence, and to enjoin its officers from exercising, or assuming to exercise, any of the functions of the office which they assume to hold as officers of the corporation, this action is brought in equity. No objection was made to the form of the action, and we therefore consider the case upon its merits.

The sole ground upon which the plaintiff relies for relief is that, at the election held, no provision was made for women to vote, and women who presented themselves—in every way qualified except by sex—were refused the right to vote. It may be conceded at the outset that plaintiff's petition must be sustained if, under the law, women re-

siding in the proposed district had a right to vote at this election. We may assume that the women were in every way qualified except in sex. We may assume that, if the women were entitled to vote, and had voted, there were enough to change the result.

Article 2, Section 1, of the Constitution of Iowa, provides that:

"Every male citizen of the United States, of the age of twenty-one years, who shall have been a resident of this state six months next preceding the election, and of the county in which he claims his vote, sixty days, shall be entitled to vote at all elections which are now or hereafter may be authorized by law."

In *In re Application of Carragher*, 149 Iowa 227, it was said:

"The legislature cannot add to or take from these qualifications (constitutional qualifications), and until the people shall have changed this feature of their fundamental law, a woman cannot be a qualified elector, in the constitutional sense of the term.

This sex limitation, however, has been held to apply only to elections in which the choice of officers is involved. See *Coggeshall v. City of Des Moines*, 138 Iowa 730. It follows, therefore, that, as to other matters not within the purview of the Constitution, the inhibition, so far as it relates to the sex of the voter, may be regulated or removed by statute. Our legislature has, by proper enactment, undertaken to vest women with the right to vote upon certain subjects, which, by interpretation, have been removed from the effect of the general constitutional prohibition, and has enacted Section 2747 of the Code of 1897, which reads as follows:

"To have the right to vote at a school meeting a person must have the same qualifications as for voting at a general election, and must be at the time an actual resident

of the corporation or subdistrict. In any election hereafter held in any school corporation for the purpose of issuing bonds for school purposes or for increasing the tax levy, the right of any citizen to vote shall not be denied or abridged on account of sex, and women may vote at such elections the same as men, under the same restrictions and qualifications, so far as applicable."

Section 1131 of the same Code provides:

"At all elections where women may vote, no registration of women shall be required; separate ballots shall be furnished for the question on which they are entitled to vote; a separate ballot box shall be provided in which all ballots cast by them shall be deposited, and a separate canvass thereof made by the judges of the election, and the returns thereof shall show such vote. The right of any citizen to vote at any city, town or school election, on the question of issuing any bonds for municipal or school purposes, and for the purpose of borrowing money, or on the question of increasing the tax levy, shall not be denied or abridged on account of sex."

These are the sections under which the women residing in this proposed district claimed the right to vote. The question arises: Does the proposition submitted at this election involve any of these questions on which women have a right to vote? Under Section 2747, women have a right to vote at any election *in any school corporation* where the purpose of the election is the issuing of bonds for school purposes, or the increasing of the tax levy.

Section 1131 provides that women have a right to vote at any city, town, or school election on the question of issuing any bonds for municipal or school purposes, and for the purpose of borrowing money, or on the question of increasing the tax levy.

The right of women to vote at the election in question must be found in these statutes. Of course, as said in

*Younker v. Susong,* 173 Iowa 663, the question need not be directly involved: that is, "Shall the tax levy be increased?" It is sufficient if the effect of the vote necessarily is to increase the burden of tax, or necessarily resulted in increasing the tax levy. Thus, it is said in this *Younker* case:

"On the face of the act itself, the city may be and is authorized, by the vote of the people at the election in question, to do the things which will necessarily increase the tax."

In this *Younker* case, the thought seems to be that the city, before the election, had certain obligations which it was required to meet. These obligations could not be met except by the levy of tax upon the property within its corporate limits. To increase its obligations to pay called upon it to increase the fund out of which payment should be made. This fund could only be increased by taxation. Therefore, it was argued that, by increasing the burden on the fund, it followed logically that the fund would have to be increased to carry the burden. The fund could only be supplied by taxation. Therefore, the increased burden called for an increase in taxation; and it was held that women had a right to vote on the question there proposed, because the necessary effect of the creation of a municipal court was to call on the taxpayer for more money to sustain it, and, therefore, necessarily increased the burden of taxation, unless the court, when created, was self-sustaining. The last question was the only one considered by the court as problematical or uncertain. Without further comment upon that case and its reasoning,—though this seems to be the case mainly relied upon by the plaintiff in this suit, as supporting his contention,—we have to say that the question submitted in the present case does not necessarily involve any of the questions upon which women have a right to vote. It involves the simple question as to wheth-

er a consolidated school district shall be organized, including certain territory. Whether the effect of that organization will be to increase the taxes within the district, is one of uncertainty. It is one that could not be determined before the creation of the corporation. The district was only proposed. The question of whether it should be organized into an independent consolidated school district was the only question submitted.

It will be noted that these statutes giving to women a right to vote upon certain questions do not limit the right to those women personally affected by the vote. All women may vote, if brought within the rights given by statute, no matter what the effect may be upon 'the proposed voter individually. It would, therefore, be an unnecessary inquiry what effect the creation of the new corporation would have upon the individual voter. It may be argued, and is argued, that all property owners whose property lay outside the independent district in which the town of Glidden is situated, will be required to pay more taxes than they were required to pay before the district was consolidated; and it may be argued with just as much force that those residing within the independent school district of Glidden may not be required to pay as much. The question is not what each citizen in the several included districts was required to pay before the consolidation, as compared with what she would be required to pay after the consolidation; because, by that method of comparison, some women within the territory might rightly be refused the privilege of voting upon the question here under consideration, while other women could not rightly be denied. It will be noted that, in Section 2747, it is said that, in any election hereafter held in any school corporation for the purpose of issuing bonds for school purposes or for increasing the tax levy, women shall have the right to vote. This presupposes the existence of a school corporation in

which an election is to be held, and in which it is proposed to increase the corporate or district tax fund created out of tax levies upon the property within that district. Here, we have no school corporation, to be directly affected. The object of the election is to create a corporation in which, after being created, school taxes may be levied. A question might well then arise in the corporation, upon which women would, under this statute, be entitled to express themselves. Or, in other words, there was, when this corporation was proposed, at the time this election was held, no existing corporation whose taxes could be increased. Neither the direct nor the indirect effect of the vote necessarily increased or decreased taxes, or raised the tax levy of the district. To increase suggests the existence of something that may be increased or decreased. The proposed corporation not being in existence, no tax ever having been levied for the corporation, there was no tax that could be increased or decreased by the vote. It could have no taxes until it was legally organized, until officers were elected, until provision was made for the assessment and levy of taxes. At the time this corporation was proposed, there was included in it the school district of Glidden, a portion of the school township of Glidden, a portion of the school township of Brant, a portion of the school township of Richland. Portions of all this territory were taken into the new district. These school corporations were separate entities, had their own method of levying taxes, and their taxes could be definitely ascertained. It is claimed that the taxes in the proposed corporation would be greater on these portions of these several old corporations that were included in the new corporation, than they were under the old organizations. The taxes of none of these old organizations, as such, could be increased by this new organization. The new corporation came into existence only by this vote; and, therefore, it cannot

be said that its taxes could be increased or decreased. What, then, do we look to. for the basis of comparison as to whether the tax is increased or decreased? Not to the effect upon the individual, not to the effect upon the property of the old district. At the time the vote was called for upon the proposed district, no levy had been made in this proposed district. No tax had ever been levied by which any comparison could be made of increase or decrease. There is no logical way of ascertaining whether the tax would be, or would not be, increased. It follows, therefore, that the tax was not necessarily increased, as said in *Younker v. Susong,* supra. It follows, therefore, that *Younker v. Susong* is no authority for the contention here; nor is the *Coggeshall* case, supra. So we say it is not the question as to whether the individual must pay more tax or not,—it is not a question whether the owners of land in the old district included in the new district would pay more or less in the new district than they did in the old,—but whether or not the proposition submitted here necessarily increased the taxes in the proposed district, as an entity. So we say

2. ELECTIONS: women voters: increase in taxation.

that this limited statutory enfranchisement of women gave them no right to vote on the proposition here under consideration; and further, even if we should concede it does, the fact on which they predicate the right to exercise the franchise must be manifested with certainty at the time they attempt to exercise the franchise. Neither proposition is sustained in this case. We therefore agree with the district court, and affirm its action in dismissing plaintiff's petition.— *Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.